Welcome. Judge Black and I would like to welcome our colleague from the District Court in Georgia, the Northern District of Georgia, Judge Lee Martin May. She is an active District Court judge and we are delighted to have her here to help us. She is every much as part of this Court as Judge Black and I are. She has as much a vote and say in how we decide these cases. I would like to assure you she is also going to get her share of the workload when we decide the cases. We are dependent upon our skilled and industrious visiting judges and we are particularly delighted to have an active District Judge with us today. First case up is FTC v. Universal Processing. We will hear first from Mr. Weiner. Good morning, Your Honor. It is Wiener. You rule against me and then it is Weiner. But not Weiner. If we could, Valerie, if there is something we could do about this temperature in here, I would appreciate it. I am a little warm. Right, right, right. Everybody is a little warm. All right. Christian is taking care of it. Go ahead, Mr. Weiner. Thank you. May it please the Court, Louis Weiner for Appellant, Universal Processing Services of They are reflected in the Court's order at Joint Appendix 1673. The first line of that part of the order acknowledges that UPS, my client, violated the telemarketing sales rules. There is no dispute about that. This next sentence, says defendants who violate Section 5 of the FTC Act are held jointly and severally liable for the total amount of monetary loss. The problem is there is no connection between the two. And that manifests the first error, which is that, and it is an abuse of discretion, that by holding UPS jointly and severally liable for the common enterprise defendants' wrongdoing and unjust enrichment, it never found that my client participated in the common enterprise. Absent a finding of participation in the common enterprise, there simply is no basis to find joint and several liability. Well, that is the issue, isn't it? I mean, you would concede if it was a common enterprise and you were part of it, that you would be jointly and several, well, you would be liable whether it is joint and several liability or just liable. Yes, Your Honor. Okay. And that is the only test that courts have articulated for finding joint and several liability. Yeah, but they haven't articulated that there is no joint and several liability, or at least we haven't and no binding authority has in the precise circumstances of this case, so you need to tell us about that. Well, Your Honor, all the cases that have found that there is joint and several liability have done so on the basis of a finding that there was a violation of Section 13B of the FTC Act. A violation alone of the telemarketing sales rules has never been held to found a violation of the rule was a violation of the Act. It's not. And no case has ever found that. Wouldn't it be a deceptive practice? I'm sorry? Why would it not be a deceptive practice to violate the rule? It may be a deceptive practice, but it does not mean that you're part of a common enterprise, which is the test. I'm putting to the common enterprise counsel, if your client violated the rule, the telemarketing sales rule, why is that not by itself enough to establish a violation of the Act? The rule enforces the Act. The rule interprets the Act. The rule says this is part of the prohibitions of the Act, and your client violated it. My client was found to have violated was providing substantial assistance to those who violated the Act. Which is part of the prohibitions of the Act. Thou shalt not provide substantial assistance. By definition, when you adopt a rule through the rulemaking process, it becomes enforceable as part of the Act, does it not? My client was never alleged to have violated the Act. It was never given the opportunity to defend it. Counsel, counsel, if as a matter of law, a violation of the rule violates the Act, and your counsel was found to have violated the rule, then your client was found to and was alleged to have violated the Act. It's that simple. Your Honor, my client was never alleged to have violated the Act. I understand your client was alleged to have violated the rule. If a violation of the rule is a violation of the Act, why isn't an allegation or a charge that your client violated the rule enough to charge your client with having violated the Act? It may be, Your Honor, but they never were charged with a violation of the Act. They never had the opportunity. Are you deliberately missing the question or do I need to articulate it the fourth time? If a violation of the rule is, as a matter of law, a violation of the Act, then alleging a violation of the Act, it is no meaningful or persuasive response to that syllogism to say that we're never charged with a violation of the Act. You're just denying the conclusion without telling me what's wrong with the syllogism. Your Honor, I'm not trying to avoid your question. My proposition is that no court has ever found a violation of the rule to constitute sufficient evidence or sufficient basis to find an alleged wrongdoer jointly and severally liable for those who have been found specifically liable for a violation of the Act. But the fact that it hasn't happened before doesn't mean that we're not going to do that because what I've seen is there are examples of common enterprises that have been found jointly and severally liable, but just because that's an example of it doesn't mean that that's limited to that particular set of circumstances. You are correct that there is no case that says you can't find that. There simply are no cases that have done that. Chapman is a case out of the Tenth Circuit is a case where the court found that there had been a violation of the telemarketing sales rule but did not extend jointly and again, no specific finding that there had been a violation of the Act. There had been finding that there was substantial assistance, but the damages in that case were limited to the damages. I think you're relying too much on what's happened in the past because what we're looking at is the future and what the rule should be. And just because this hasn't happened in the past doesn't mean that given the facts here and the finding of the violation of the rule that these aren't the kind of circumstances that warrant extension or at least clarification that there's no limitation into this common enterprise area. I think that what will happen is, in my fear, is that what happens here is that the law becomes a gotcha. You no longer have to show a common enterprise in order to establish or to assert joint and several liability. You just have to assert and prove that someone substantially assisted those that were part of a common enterprise. You find one entity with deep pockets, you allege that they violated the telemarketing sales rule, and you have then hung Damocles' sword over their head of saying, and you could be liable for jointly and severally with those who have violated the Act simply because you provided substantial assistance. Knowingly, or should have known, provided substantial assistance. That'd be a wonderful deterrent, wouldn't it? You're not saying it's irrational. Well, it may not be irrational, Your Honor, but the point is that all the courts that have assessed joint and several liability under the FTC Act have done so pursuant to a finding that the wrongdoer was part of a common enterprise. Yeah, but the question is, have any of them rejected this specific proposition in this case? Not that I'm aware of, Your Honor, close to Chapman. So it's an unaddressed issue. But there is a test that every court that has assessed joint and several liability has followed, and it is the common enterprise test for assessing corporate liability. If there is a common enterprise, you're jointly and severably liable. It doesn't mean if there isn't a common enterprise, you're not jointly and severably liable. And no court has ever held that, Your Honor. This may be the first. Counsel, let me follow up on one of Judge Carnes' questions and assume that a violation of the rule is a violation of the Act. Just assume that. Would it stand to reason then that the Act's remedies would be on the table for a violation of the rule? If that's where you're going to start, then I think it's a logical conclusion. Again, I'm not trying to avoid answering the question. I just don't agree with the proposition that a violation of the telemarket sales rules establishes, without a finding of common enterprise, a basis for imposing joint and several liability. Joint and several liability is established because it says the entities we're working is one. Absent that finding, there's no basis for the imposition of joint and several liability. I have a question about another part of your argument, and that has to do with apportionment. I understand you're arguing that this should have been apportioned, but in terms of my understanding of apportionment, you don't really apportion damages. You portion the harm. And how would you apportion the harm? I see a lot of apportioning by profits, but that's not how apportionment really works. No, apportionment should be based upon the gains to the entity that is being forced to disgorge the ill-gotten gains. To do an apportionment analysis would have resulted in a finding that my client's total gain in this case was less than $7,000. The point is that the court never undertook the analysis. But I don't see if they had that it would have resulted in a different result because apportionment deals with the harm that was caused, not necessarily the profits. So if there is a finding that the harm is indivisible, how is there any basis to apportion? Your Honor, the fact is that the analysis was never undertaken to give my client the opportunity to present evidence on apportionment. There's a two-part test that the court undertook with respect to the common enterprise defendants. First, the FTC makes its proffer as to what the damages should be. The burden then shifts to the wrongdoer to determine or to present evidence as to how apportionment in its estimation should be calculated. That was never done here with respect to my client. They never had the opportunity. I guess my question is, how would you apportion when someone substantially caused one indivisible harm? And that's what I don't understand. Even if we do go with apportionment, how would you apportionment substantially assisted? Well, again, there are monies that went to distinct entities. There are monies that went to MasterCard and Visa. There are monies that went to specific individuals that were part of the common enterprise. There was a separate bucket of monies that went to my client. You can apportion that based on where the money went. And, again, my client should have had the opportunity to at least make the proffer to the court and have the court undertake the relevant test to determine apportionment. That is if we limit the remedy to the amount of money obtained by your client, the net gain by your client. Suppose somebody substantially assisted it and didn't gain a penny, but they're a critical part of it. Again, I come back to your Honor, the fact that they are a critical part would make them part of the common enterprise. That's simply not the case with respect to my client. Why is your client not the critical part? Without these two merchant sales accounts, the scheme wouldn't work, would it? Your Honor, the scheme wouldn't work if they didn't have access to phone lines. I know, but wait, wait, wait. You're saying your client wasn't a critical part. I think critical part includes and is defined as a part which is critical to the success. I've just told you why your client was critical to the success and now you're telling me why they need phones. No, answer my question. If those merchant sales accounts were critical to the success of the scheme, then why wasn't your client a critical part of the scheme? My client participated, there was a finding of substantial participation which justified the finding for violating the telemarketing sales rule. There was no finding nor was there an allegation that they were part of a common enterprise. I'm not saying common enterprise. I'm saying if their substantial assistance was critical to the success of the scheme, then why is that not enough? Your Honor, that's what justified the court's finding that they violated the telemarketing sales rule and they are responsible for their actions in violating the telemarketing sales rule. And for any harm it caused, right? For the harm that it caused, that can be apportioned to it. All right. But if 100% of the harm that was caused would not have occurred but for their substantial assistance, then why are they not apportioned 100%? Your Honor, they may be. My client should have the opportunity to present evidence on that and the court should have applied the test. What evidence do you need other than the undisputed finding that the merchant sales accounts were essential for 100% of the success of the scheme? Your Honor, my client should have had the opportunity to make the argument that it is entitled to make under the law. The court never undertook the analysis. What argument? Once you concede that they rendered substantial assistance and once you concede what I understood to be undisputed, which was that the two merchant sales accounts were critical to the success of any part of the scheme, any of the losses of the victims, what else is there to find? Your Honor, then there is no distinction between providing substantial assistance for a violation of the TSR and the common enterprise rule for a violation of the FTC Act. You have just said basically that there is no distinction between those rules. I've said if their substantial assistance is absolutely critical and necessary for the success of the scheme, there is no difference. Your Honor, we believe that our client should have had the opportunity to present that evidence to the court. What evidence would it have presented? Your Honor, the fact is they were never given the opportunity to present any evidence. I'm asking you now. Court's in session. We're here for the hearing. What are you going to profit? I'm going to show how the money was actually divided between the various tort feasors. So not who caused it, but how the money was divided. Again, Your Honor, if you're going to collapse the distinction and say that effectively my client was part of a common enterprise, that was never a part of the lower court's finding. The evidence you're going to present would be solely limited to who got how much out of it. On an apportionment analysis, yes, but my client would also have the opportunity presumably to I'm talking. Would your client have any evidence that it didn't provide the two merchant sales accounts or that somehow they didn't matter? No, Your Honor. Okay. All right. We'll give you three minutes. I took you over and we'll hear now from Mr. Metzler. Thank you. Good morning, Your Honors. May it please the court, Jack Metzler for the Federal Trade Commission. I just want to review quickly the undisputed facts in this case. The fact is that Universal knew that it was helping Treasurer Success to make fraudulent deductions from consumer credit cards. They knew Are you arguing joint common enterprise? Are you arguing the remedy for substantial assistance alone? Well, let me, I think there's a little bit of, it's a little murky about common enterprise. So let me just explain what it is that courts mean when they find that there's a common enterprise. All that means is that when defendants have set up a sham corporate structure to hide their activities, the court treats those, ignores those sham divisions and treats them as one entity. But that entity is just one actor in the scheme. A common enterprise doesn't mean everyone who was involved in the scheme, individuals and corporations. It just means those, it just is a tool to erase those corporate distinctions. Universal was not part of the common enterprise. It was not part of the common enterprise. But the common enterprise was one actor. Universal was another actor. The individual, Hal Smith, was yet another actor. Yeah, and your argument is that there is a basis for joint and several liability beyond the common enterprise. Yes, and in fact, that's been held in many cases. This court in Gem Merchandising, for example, held an individual liable along with the corporation that he owned. Each of them acted separately. The individual didn't make all of the calls, for example, but he was in control of the corporation, which did. So there was joint and several liability in that case. In the Fourth Circuit, the FTC versus Ross case, there was an individual who was in control again of one of numerous entities which were a common enterprise. And so because of her control and participation in the scheme, she was jointly liable with the enterprise. But she's not in the enterprise. But in Gem Merchandise, we said disgorgement and restitution are measured by the defendant's unjust enrichment. Now, I'm not sure if that's one of the, there's a few places in some of the cases where it says defendants apostrophe S. Most of them say defendant S apostrophe. I'm looking at a quote and it's got apostrophe S, unjust enrichment. I think that's because we're talking about one corporation in that case. But then it says, quote, net revenue gross receipts minus refunds, the defendants with an S receive. With an S apostrophe? No, just defendants with an S. In Washington Data Resources, the court was pretty clear about what the measure of damages are and it is the defendant's S apostrophe. And you'll find another of places where that word is in brackets in the appellant's brief. And they have moved the apostrophe from the end to before the S. But Washington Data Resources is the standard for determining what the amount of liability is. And that's really the only thing that's on appeal here. Did the district court abuse her discretion when she ordered universal, jointly and separately liable with the other actors in this case? The problem with throwing around the term and with we've done it in opinions and y'all have done it in your briefs, joint and separate liability, is it sometimes gets confused with the tort concept, the general tort concept of joint and separate liability, which Wigmore wrote about 70, 80 years ago and had been part of the law a long time before that. I always understood that generally to mean sort of a common enterprise type thing or a situation in which you couldn't clearly determine which conduct had caused which injuries. That's correct. Which losses. And both of those concepts have been applied to federal law enforcement cases like this or in the SEC context. Here, the analog is the restatement of torts section 476 C.B., which says that when individuals act in concert to create a single harm or one substantially assists the other, knowingly substantially assists the other, they're jointly and separately liable. And in fact, the FTC, when we promulgated the telemarketing sales rule, cited that very provision. And when we created the assisting and facilitating violation, that was at the direction of Congress, which had asked us to prohibit. In terms of the restatement of torts, one thing I'm a little confused about is are you saying that the lower court properly applied the restatement of torts as the standard for analyzing this? Or are you saying that we should adopt that clearly as the standard for doing that? Or are you saying that that's already the standard? Well, I think it's already the standard. To the extent that the court can articulate it a little bit less in the margins and more in the main text, that would be wonderful. But I think that's the standard that the court has always applied and all courts have applied. It's not clear to me that the lower court actually applied that standard. What is your support for the fact that that is the analysis that the lower court actually applied? Do you mean whether the lower court applied 476 to find that they were acting in concert? Right. It seemed a little conclusory in terms of the way it was analyzed. It did seem like they looked at the facts and then just stated joint and several liability. And it wasn't clear to me from reading the order that they actually went through a restatement kind of analysis or what actual standard they applied. So I have some kind of concern that we adopt this as clearly the standard, but not it being totally clear that that was the standard that was applied below. Well, in this case, there wasn't really much of an occasion to go through the exact analysis because the telemarketing sales rule has sort of baked into it the section 476 standard. That is the violation of the telemarketing sales rule knowingly assisting and facilitating a violation of the rule. So once you've done that, that is all of the analysis of the restatement. And the conclusion is that joint and several liability follows. In another case, for example, this court had IAB, FTC versus IAB, which is cited in our briefs. And in that case involved a membership organization that was selling its memberships as if they were health insurance. But it didn't do the selling itself. It used a telemarketer. And in fact, it used two telemarketers. So although they were separate cases and settled, each of those telemarketers was only responsible for the part of the scheme that it was responsible for making the calls. So telemarketer A did it for a while, and then we shut them down in a different case. Telemarketer B came on, and then they were part of the same case with IAB, which is the corporation. And they were jointly and severally liable for IAB, the entire scheme. Telemarketer B was only responsible for the part that they did. So in a case like that, you would have to do an analysis as to whether the harm was capable of apportionment, which, as you say, apportionment means whether the harm is divisible. Here, there's no question on appeal, and it was undisputed below, that Universal caused all of the harm. And so there simply is no apportionment. And I would like to address my friend's statement that Universal was not given the opportunity to argue apportionment. There was, of course, briefing on the remedy in this case. After remand? Not after remand, but before remand. And I think in the first go around on this appeal, we pointed out that they hadn't even really argued against joint and sever liability. But certainly, they had the ability there to present whatever evidence they might have that the harm here was apportionable. They were arguing that they should pay less. They were arguing that only because they didn't receive or get to keep all of the proceeds. But under Washington Data Resources, that's the analysis doesn't take into account. In fact, Washington Data Resources specifically rejects the idea that they can, that Universal can deduct its own business expenses. For example, the amounts that it paid to its agent, in this case, Hal Smith, and the amounts that it paid to BCN MasterCard. So that doesn't figure into unjust enrichment? I wouldn't think you'd be enriched to the extent of your gross revenue. Well, so the difference there is you are enriched to the, what Washington Data Resources says is net revenue. So the gross revenue that was received by the scheme, less the refunds that went back to consumers. And this sort of gets to the reason for joint and sever liability in the first place. Well, that's not really net revenue. Well, it's net revenue. It's net loss. That's net loss by the victims. Well, in a case like this, where the money flows directly from the victim to the defendants, they're the same. And this is what this court has said in Washington Data Resources. In another case, like the Verity case that's cited in the briefs, there was a middleman, an uninvolved middleman, who took a cut before the money ever got to any defendant. And what this court sort of affirmed in Washington Data Resources is in that kind of situation, nobody in the scheme was enriched by the money that none of them got. Here, they got all the money. There was no middleman, no innocent middleman that took a cut. The only middleman was essentially a co-conspirator. The district court in this case says that equitable money relief is necessary and appropriate to relieve the substantial and undisputed consumer losses in this case. That's why it gave the $1.7 million. That was how much the consumers lost. Right. But we held in Washington Data Resources that Section 13b permits disgorgement measured by the defendant's unjust enrichment but prohibits disgorgement measured by consumer loss. The district court measured the disgorgement by the consumer loss in this case, didn't it? No, I don't think so. It said equitable monetary relief is necessary and appropriate to relieve the substantial and undisputed consumer losses, didn't say to undo the substantial and undisputed unjust enrichment. Well, of course, there's nothing wrong with compensating consumers for the money that they lost in this case. And I think that's- Except that's not the proper measure according to what we said in Washington Data Resources. Well, I'm responding to the one line from the district court's opinion. Sure, yes, it is appropriate to disgorge this money and give it back to consumers. But what this court said in Washington Data Resources and applied in FTC versus IAB is when the money goes directly from the consumer to the defendants, the defendants with an S, then there is no middleman. And the measure of consumer loss and disgorgement are exactly the same. So you could say the court added it up and wound up with a consumer loss figure. But if that is X, then Y is disgorgement and X equals Y because they're the same. I'm over my time. So if the court has no further questions. We don't. Thank you. Thank you. Dwayne, you have three minutes. Your Honor, I return to the point that the only cases in which joint and several liability have been imposed have been based on a finding of common enterprise. There was no finding of common enterprise here. You are correct, Your Honor, that the court below did base its damages award based on the consumer loss, not the disgorgement. I understood the FTC's argument to say the same thing. Well, Your Honor, they're not. They simply are not. My client was unjust enriched, if it was enriched at all, for a total of just under $7,000. What he's saying is if you consider the defendants collectively. I was asking him that question because I thought an argument could be made under Washington Data Resources that even assuming his position of joint and several liability, the district court measured consumer loss for the collective liability of all of the defendants as opposed to unjust enrichment. And his response, as I understand it, is it's the same thing in this case. Your Honor, if it is, that certainly is. There is nothing in the lower court's decision that would give an indication that it reached that conclusion. Again, Your Honor, we think that the loss here is divisible, no different than Chapman. There is really no basis to say, as the court did below, that Chapman is distinguishable simply because Chapman did not involve a payment processor. The actions of Ms. Chapman in that case were part of an overall scheme that the court found defrauded consumers. You can no more apportion the damages there than I think you can here. But the court there said that she was not part of a common enterprise. The damages attributable to her were discrete and separate and apart from the damages as a whole. We think that the same analysis could be undertaken here and should have been undertaken here to apportion the damage that befell the consumers. My client was unjust and rich to the tune of less than $7,000. We know where the money went. We can identify where the money went. The court never undertook the analysis that we believe it should have taken to properly apportion the damages. Thank you. Thank you, counsel. We will take that case under submission and now hear argument in CSX Transportation.